IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH WARRANT AND ORDERS PURSUANT TO 18 U.S.C. §§ 2703(C)(1)(A) AND 3122(A)(1) FOR THE<br><br>(1) DISCLOSURE OF PROSPECTIVE CELL-SITE DATA AND E-911 PHASE II DATA;<br><br>(2) DISCLOSURE OF STORED TELECOMMUNICATIONS RECORDS; AND<br><br>(3) INSTALLATION OF A PEN REGISTER/TRAP AND TRACE DEVICE<br><br>ON 302-415-9884 | No. 1:24-sw-362<br>No. 1:24-ec-1181<br><br>**UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF PROBABLE CAUSE**

I, Ryan C. Daly, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an Application for a Search Warrant under 18 U.S.C. §§ 2703(c)(1)(A) for information associated with a cellular device assigned with the telephone number 302-415-9884 ("TARGET CELL PHONE"), which is serviced by T-Mobile US, Inc. ("TELEPHONE SERVICE PROVIDER"), headquartered at 4 Sylvan Way, Parsippany, New Jersey, and with a subscriber that is unknown but that is used by Elijah "Nephew the Genius" Loatman. As a provider of wireless communications service, the TELEPHONE SERVICE PROVIDER is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2. Because this warrant seeks the prospective collection of information, including cell site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4) ("pen/trap device"), the requested warrant is designed also to comply with the Pen Register Act, *see* 18 U.S.C. §§ 3121–3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3. The information to be searched is described in the following paragraphs and in Attachment A.  This Affidavit is made in support of an Application for a Search Warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require the TELEPHONE SERVICE PROVIDER to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

4. I am a Special Agent Ryan C. Daly with the Federal Bureau of Investigation, and have been since 2015.  As a Special Agent with the FBI, I am authorized to investigate crimes involving violations of federal law.  I am currently assigned to investigate matters involving healthcare fraud and environmental offenses.  Through my training, education, and experience, I have become familiar with the manner in which criminal activity is carried out, and the efforts of persons involved in such activity to avoid detection by law enforcement.

5. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this Affidavit, there is probable cause to believe that criminal violations of 18 U.S.C. §371 and 7 U.S.C. § 2156 (conspiracy to engage in an animal fighting venture) have been committed by Loatman and other members of the "DMV Board." There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

7. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. The United States, including Federal Bureau of Investigation, is conducting a criminal investigation of Elijah Loatman and other members of the "DMV Board" regarding possible violations of 18 U.S.C. §371 and 7 U.S.C. § 2156 (conspiracy to engage in an animal fighting venture).

9. On May 16, 2024, a federal grand jury in this district indicted Loatman and one other on one count of conspiring to engage in an animal fighting venture, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2156. That indictment detailed that between 2018 and November 2022, Elijah Loatman and other members and associates of the "DMV Board" conspired to sponsor and exhibit dogs in animal fighting ventures; to sell, buy, possess, train, transport, deliver, and receive dogs for purposes of having the dogs participate in animal fighting ventures; and to use instrumentalities of interstate commerce for commercial speech for purposes of advertising animals for use in animal fighting ventures, promoting and in other manners furthering animal fighting ventures, all in violation of Title 7, United States Code, § 2156, and Title 18, United States Code, §49(a).

3

10. The indictment detailed that the defendants and their conspirators bred, trained, and used pit bull-type dogs for dogfights. The investigation revealed and the indictment detailed how the defendants and their conspirators created and used an online platform labeled the "DMV Board" as a place where they and their associates could exchange videos about dogfighting; discuss training techniques to develop successful fighting dogs; and arrange, coordinate, watch, discuss, and bet on dogfights, all away from the view of law enforcement authorities. The defendants and their co-conspirators used the DMV Board to discuss which dogfighters could be trusted to join the group, to circulate media reports about dogfighters who had been caught by law enforcement, and to discuss methods to minimize the likelihood that they would be caught themselves.

11. The indictment detailed how the defendants and their conspirators used cell phones and direct messages to discuss dogfights, dogfighting, breeding fighting dogs, training techniques to maximize their chances of developing champion fighting dogs, and methods to avoid being caught by law enforcement. Specifically, the indictment detailed in Overt Acts 2-8, 17, and 23 that Loatman used the online application Telegram to discuss dog fighting in the "DMV Board."

12. Based on the investigation conducted by the FBI, there is probable cause to believe that Loatman is the primary user of the target cell phone, as I have reviewed numerous documents where Loatman provided the target cell phone number as his own. Specifically, Loatman provided the target cell phone to register a form of communication with CashApp, Google, and Stride Bank, which were obtained through Grand Jury Subpoenas. Additionally, I spoke with Loatman on the TARGET CELL PHONE on May 8, 2024 and exchanged text messages with Loatman on the TARGET CELL PHONE on May 10, 2024.

13. As of May 13, 2024, public source information also corroborated that the target phone number is associated with Loatman. A screenshot of this information, obtained from LexisNexis is attached below:

| Elijah Calvin Loatman | | 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 | 165111138335 | 10421 Deerwood Rd Unit 1414, Houston, TX 77042-1112<br>Business | | (302) 415-9884<br>Ported |
|---|---|---|---|---|---|---|
| Name:<br>SSN:<br>LexID:<br>Address: | Elijah Calvin Loatman<br>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<br>165111138335<br>10421 Deerwood Rd Unit 1414,<br>Houston, TX 77042-1112 | | Phone: | (302) 415-9884<br>Ported<br>Phone Service Type is Wireless | Carrier:<br>Location:<br>Dates: | T-mobile Usa, Inc.<br>OVERLAND PARK, KS<br>Jan 2012 - Oct 2023 |

14. Based on my training and experience, I know that, for numerous reasons, the subjects of investigations, especially those who have had phone numbers for a substantial amount of time, do not often change their cell phone numbers. This is further corroborated by the fact that as of May 13, 2024, the phone number was still owned by T-Mobile, and had not been transferred to another provider. I believe the totality of facts means that the phone number is still being utilized by Loatman.

15. Currently, Loatman's whereabouts are known to be in Ohio for a class. When I spoke with Loatman on May 8, 2024, he did not tell me when his class was over or when he would be back at his residence in Maryland. I spoke with Loatman's wife on May 7, 2024, and she did not know when Loatman would return home. Attempts to locate Loatman, including via physical surveillance, have been unsuccessful as of May 13, 2024. Hence, the FBI is seeking this court's authorization to collect location information for the next 30 days in order to locate and arrest Loatman.

16. In my training and experience, I have learned that the TELEPHONE SERVICE PROVIDER is a company that provides cellular communications service to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information (1) about the locations of the cellular telephones to which

they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

17. Based on my training and experience, I know that TELEPHONE SERVICE PROVIDER can collect E-911 Phase II data about the location of the TARGET CELL PHONE, including by initiating a signal to determine the location of the TARGET CELL PHONE on TELEPHONE SERVICE PROVIDER's network or with such other reference points as may be reasonably available.

18. Based on my training and experience, I know that TELEPHONE SERVICE PROVIDER can collect cell-site data about the TARGET CELL PHONE.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers

6

such as TELEPHONE SERVICE PROVIDER typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

19. Based on my training and experience, I know that wireless providers such as the TELEPHONE SERVICE PROVIDER typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the TELEPHONE SERVICE PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET CELL PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed Search Warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET CELL PHONE would seriously jeopardize the ongoing investigation, as such a

disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct the TELEPHONE SERVICE PROVIDER to disclose to the government any information described in Attachment B that is within the possession, custody, or control of the TELEPHONE SERVICE PROVIDER. I also request that the Court direct the TELEPHONE SERVICE PROVIDER to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with services of the TELEPHONE SERVICE PROVIDER, including by initiating a signal to determine the location of the TARGET CELL PHONE on the network of the TELEPHONE SERVICE PROVIDER or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the TELEPHONE SERVICE PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELL PHONE outside of daytime hours.

Respectfully submitted,

*Ryan C Daly*

Special Agent Ryan C. Daly
Federal Bureau of Investigation

Subscribed and sworn to, in accordance
with Fed. R. Crim. P. 4.1, by telephone
on this 17th day of May 2024.

Digitally signed by Ivan Davis
Date: 2024.05.17 13:11:14 -04'00'

Hon. Ivan D. Davis
United States Magistrate Judge

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

1. The cellular telephone assigned call number 302-415-9884 with listed subscriber(s) unknown ("TARGET CELL PHONE"), whose wireless service provider is T-Mobile US, Inc. ("TELEPHONE SERVICE PROVIDER PROVIDER"), headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2. Records and information associated with the TARGET CELL PHONE that is within the possession, custody, or control of the TELEPHONE SERVICE PROVIDER.

# ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

**I.   INFORMATION TO BE DISCLOSED BY THE PROVIDER**

To the extent that the information described in Attachment A is within the possession, custody, or control of the TELEPHONE SERVICE PROVIDER, including any information that has been deleted but is still available to the TELEPHONE SERVICE PROVIDER or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the TELEPHONE SERVICE PROVIDER is required to disclose to the government the following information pertaining to the TARGET CELL PHONE listed in Attachment A and its related account with the TELEPHONE SERVICE PROVIDER ("SUBJECT ACCOUNT"):

**A. The following information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period of 60 days preceding the date the Warrant is executed up to the present:**

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. The following historical stored telecommunications records associated with the SUBJECT ACCOUNT for the time period of 60 days preceding the date the Warrant is executed up to the present:**

1. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT ACCOUNT, including:

    a. The date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    b. All available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the TARGET CELL PHONE.

**C. The following prospective data associated with the TARGET CELL PHONE for the time period of 30 days from the date of the Warrant (or the date the monitoring of the TARGET CELL PHONE's location becomes operational, whichever is later:**

1. Information associated with each communication to and from the TARGET CELL PHONE for a period of 30 days from the date of the Warrant or the date the monitoring equipment for the device's location becomes operational, whichever is later, during all times of day and night, including:

    a. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

    b. Source and destination telephone numbers;

    c. Date, time, and duration of communication; and

    d. All available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the TARGET CELL PHONE.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.   INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §371 and 7 U.S.C. § 2156 (conspiracy to engage in an animal fighting venture) involving Elijah "Nephew the Genius" Loatman during the period 2008 through October 25, 2023.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the TELEPHONE SERVICE PROVIDER in order to locate the things particularly described in this Warrant.